**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| ZORAIDA GONZALEZ, | : | Civ. No. 05-2524 (GEB) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **MEMORANDUM OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---

**BROWN, Chief Judge**

     This matter comes before the Court upon the appeal of plaintiff Zoraida Gonzalez ("Plaintiff") from the Commissioner of Social Security's ("Commissioner") final decision that Plaintiff was not entitled to disability insurance benefits under the Social Security Act ("the Act").  The Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rules of Civil Procedure Rule 78, will deny Plaintiff's appeal.


## I.    BACKGROUND

### A.    Initial Application and Determination

     On February 10, 2003, Plaintiff filed an application for disability insurance and supplemental security income pursuant to Title II and Part A of Title XVIII of the Act.  (Record ("R.") at 15, 48.)  Plaintiff based her application on claims of disability resulting from back

1

problems, muscle spasms, asthma, anemia, high blood pressure, and a thyroid condition.  (R. at 48; Pl.'s Br. at 2.)  Plaintiff claimed that she became unable to work on August 8, 2002 as a result of these conditions.  (R. at 48.)  After her claim was denied initially and on reconsideration, Plaintiff filed a request for a hearing by an Administrative Law Judge on July 21, 2003.  (R. at 34, 36, 39-40.)

B.      The Hearing

On September 16, 2004, Administrative Law Judge ("ALJ") Irving Tianin conducted a hearing to determine whether Plaintiff was disabled and thus entitled to benefits.  (R. at 173.)  Appearing at the hearing were Plaintiff, her attorney Mr. Thomas Klein, and vocational expert ("VE") Mr. William Slaven.  (*Id.*)

At the time of the hearing, Plaintiff was 32 years old.  (R. at 177.)  She testified that she is approximately 5' 3" and weighs approximately 180 pounds.  (R. at 180, 197.)  She has two children, ages 12 and 13.  (R. at 179.)  Plaintiff has an eighth grade education.  (*Id.*)  Plaintiff testified that she last worked in August 2002.  (R. at 181.)  Her last job was at a McDonald's restaurant, where she worked as a front cashier.  (*Id.*)  She was employed at that job for approximately a year.  (*Id.*)  According to Plaintiff, she quit the job because she could not stand or walk for very long periods of time.  (*See* R. at 182.)  She testified that since that job, she has not looked for any other work.  (*Id.*)

Plaintiff testified during the hearing that she suffers from pain in her back, and that the pain extends down to her knees.  (*Id.*)  She also testified that she suffers from occasional pains in her neck.  (R. at 200.)  According to Plaintiff, over the course of several months during 2004, she

received approximately five injections from Dr. Freeman for pain relief.  (R. at 183-84.)  She stated that the injections helped "[a] little bit" but that the pain would return.  (R. at 184.)  She also testified that during one two-month period, she received physical therapy approximately three times a week in order to help with her back pain and knee pain.  (R. at 184-85.)

Plaintiff stated that she takes Albuterol to treat her asthma.  (R. at 189.)  She testified that she uses her inhaler several times a day.  (R. at 202.)  Plaintiff further stated that when her asthma becomes more serious, she uses a machine that she has at home, and that she uses it once or twice a month during the winter.  (R. at 189-90.)  She stated that her symptoms include shortness of breath and heart palpitations, and that her condition can be exacerbated by stuffed animals, strong perfume, and physical activity.  (R. at 203-04.)  Plaintiff testified that when she feels shortness of breath, it takes her approximately five to ten minutes to recover.  (R. at 204.)  According to Plaintiff, she was hospitalized once in October 2003 as a result of her breathing problems.  (R. at 190.)

Plaintiff testified that she suffers from diabetes, but that she uses neither insulin nor any other form of medication to treat her diabetes.  (R. at 191.)  According to Plaintiff, her high blood pressure was "under control" at the time of the hearing because of her medications.  (R. at 204.)

In describing her daily activities, Plaintiff stated that she gets up in the morning at approximately 7 o'clock and gets her children ready for breakfast, which they help to prepare.  (R. at 192.)  After the children leave for school, Plaintiff sometimes tries to clean the house but finds herself unable to do so because she begins feeling dizzy.  (*Id.*)  When that happens, Plaintiff's mother and brother help to cook.  (*Id.*)  According to Plaintiff, she is unable to vacuum, sweep, or clean laundry, and instead relies on her family members to help.  (R. at 193-

94.)  She is able to cook with assistance and is also able to wash dishes.  (R. at 194.)  Plaintiff

testified that she shops for food, but that it takes one to two hours for her to do so, and that she

does not shop alone.  (R. at 194-95.)  Plaintiff stated that she takes pain medication and that it

helps "a little bit."  (R. at 196.)  She testified that she does not go out during the day except to see

doctors, receive treatment, or go shopping.  (*Id.*)

Plaintiff also testified at the hearing about her physical capabilities.  According to

Plaintiff, carrying a gallon of milk feels heavy to her.  (R. at 188.)  She testified that she has

trouble sitting for longer than half an hour, and that she can stand for only about 10 minutes at a

time.  (R. at 188-89.)  She further testified that she can walk approximately 100 to 150 feet

before getting shortness of breath.  (R. at 189.)

Plaintiff described her job at McDonald's as involving standing "eight hours straight."

(R. at 198.)  She said that she could not stand for very long, but was not allowed to take breaks.

(*Id.*)  According to Plaintiff, as a result of her medical problems, including her back and knee

pains, she would miss two or three days of work per month during her last year of work at

McDonald's.  (R. at 199.)  Plaintiff stated that her pains get worse under certain circumstances,

including performing physical activity and being exposed to air conditioning.  (R. at 201.)  She

testified that her back and knee pains persisted daily.  (R. at 200-02.)  Plaintiff also testified that

her legs and feet start swelling if she stands for an extended period, and that she does not wear

regular shoes as a result.  (R. at 206-07.)  She also stated that her arms and hands also swell when

she uses them.  (R. at 207-08.)  Plaintiff's work history report showed that prior to her work at

McDonald's, she provided cleaning services to a deli and worked as a sewing machine operator.

(R. at 210-11.)

During the hearing, the VE testified that, based on Plaintiff's work history report, her job at McDonald's as a cashier constituted unskilled work involving light physical demands.  (R. at 210.)  With respect to her previous cleaning job during 2001, the VE classified that work as unskilled work with medium physical demands.  (*Id.*)  Finally, with respect to Plaintiff's previous work operating a sewing machine, he classified that work as unskilled with light physical demands.  (R. at 210-11.)

The VE testified that Plaintiff was unable perform her past work in light of her impairments and the physical demands of those previous jobs.  (R. at 211-12.)  The ALJ asked the VE whether there were any jobs available in the national economy for an individual capable of performing light work, and who had the same age, education, and work background as Plaintiff, if the job involved the opportunity to alternate positions, sitting and standing, occasional postural activities, no exposure to heights, hazards, or exposure to excessive dust fumes, odors, or gases.  (R. at 211-12.)  The VE testified that there were such jobs available to an individual fitting that description.  (R. at 212.)  He gave several examples of such light unskilled work, as well as regional and national estimates of the availability of those jobs.  (*Id.*)

**C.     The ALJ Decision and the Objective Medical Records Discussed in the Decision**

On September 24, 2004, the ALJ issued his decision and found that Plaintiff was not disabled within the meaning of the Act.  (R. at 12.)  The ALJ concluded that Plaintiff's impairments did not meet any of the listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listing"), and that Plaintiff retained the residual functional capacity ("RFC") to

perform work existing in significant numbers in the national economy.  (R. at 17-18, 21-22.)  The ALJ's opinion summarized the evidence in the record, which included Plaintiff's various medical records and Plaintiff's testimony.  (*See* R. at 17-21.)

### 1.      Plaintiff's Back Disorder

In discussing Plaintiff's back disorder, the ALJ observed that an MRI of Plaintiff's lumbar spine, dated September 6, 2004, revealed minimal diffuse bulges at L4-L5 and L5-S1, with mild degenerative changes, and no evidence of canal stenosis.  (R. at 17, 133-34.)  The ALJ also discussed an MRI of Plaintiff's cervical spine, dated November 22, 2002, that showed no evidence of disc herniation.  (R. at 17, 105.)  He also discussed Dr. Dhamija's physical examination of Plaintiff, conducted in May 2003, which revealed no motor or sensation loss experienced by Plaintiff.  (R. at 17, 115.)  Dr. Dhamija reported that Plaintiff was able to bend forward and side to side, as well as walk on her toes and heels, with normal tandem walk.  (*Id.*)

### 2.      Plaintiff's Knee Disorder

The ALJ also considered the relevant medical evidence concerning Plaintiff's knee disorder.  (R. at 17-18.)  The ALJ identified an MRI test of Plaintiff's right knee, dated March 29, 2003, that showed mild to moderate degenerative changes and patellar tendinopathy or degeneration, and no meniscal or ligamentous tear.  (R. at 18, 144.)  The ALJ also discussed a more recent MRI test of Plaintiff's right knee, dated September 6, 2004, which revealed Grade III chondromalacia patella.  (R. at 18, 132.)

### 3.     Plaintiff's Asthma

The ALJ also discussed Plaintiff's asthma in his decision.  (R. at 18.)  He noted Plaintiff's

testimony that she uses inhalers when necessary, and that during the winter she also uses a

nebulizer.  (R. at 18, 189-90.)  The ALJ observed that there was no evidence showing that, other

than treatment she received in an emergency room in October 2003, Plaintiff suffered any other

asthma attacks requiring medical intervention.  (R. at 18, 190-91.)

### 4.     Plaintiff's Other Medical Conditions

While Plaintiff's disability claim was based primarily on her back disorder, knee disorder,

and asthma, the ALJ also addressed Plaintiff's other claimed impairments.  With respect to

Plaintiff's diabetes, the ALJ referred to Dr. Dhamija's consultative examination report and found

that "this condition is controlled with diet and the claimant did not testify that it causes any

limitations."  (R. at 17, 116.)  The ALJ also noted that while Dr. Rivera, in his letter dated

December 10, 2002, stated that Plaintiff has lupus, "the medical evidence does not show any

symptoms, flare-ups, or treatment for this condition."  (R. at 17, 138, 193.)  Finally, the ALJ

observed that while Plaintiff "suffers from a thyroid condition, hypertension, and anemia[,]

[t]hese impairments are well controlled with medication."  (R. at 17, 114-15, 193.)  Plaintiff does

not challenge the ALJ's findings with respect to these additional impairments.

### 5.     The ALJ's Application of the Five-Step Sequential Evaluation Process

In his decision, the ALJ described the five-step sequential evaluation process to be

followed in determining whether a claimant is disabled.  (R. at 16.)  At the first step, the ALJ

found that Plaintiff was not engaging in substantial gainful activity.  (*Id.*)  At the second step, he

found that Plaintiff had severe impairments with respect to her back disorder, bilateral knee

disorders, obesity, and asthma, but that Plaintiff did not suffer severe impairments with respect to

diabetes, lupus, her thyroid condition, hypertension, or anemia.  (*See* R. at 16-17.)  At step three,

the ALJ found that Plaintiff did not satisfy the requirements for the relevant Listings, including:

(1) disorders of the spine (Listing 1.04); (2) major dysfunction of a joint due to any cause (Listing

1.02); and (3) asthma (Listing 3.03).  (R. at 17-18.)  At step four, the ALJ found that Plaintiff did

not retain the RFC to perform her past work, which was classified as light to medium work.  (R.

at 21.)  At the fifth step, the ALJ found that Plaintiff retained the RFC to perform work existing

in significant numbers in the national economy.  (R. at 21-22.)


### D.    Plaintiff's Appeal

On or about October 18, 2004, Plaintiff requested that the Appeals Council review the

ALJ's decision.  (R. at 11.)  On or about March 17, 2005, the Appeals Council denied the request

for review.  (R. at 4.)  On May 13, 2005, Plaintiff filed the present action seeking review of the

denial of her disability claim.


## II.    DISCUSSION

### A.    Standard of Review for Social Security Appeals

The Commissioner's decisions as to questions of fact are conclusive before a reviewing

court if they are supported by "substantial evidence" in the record.  42 U.S.C. § 405(g); *Knepp v.*

*Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted).

The Third Circuit Court of Appeals has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in original).  The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits.  *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978).  The Third Circuit Court of Appeals has held that access to the ALJ's reasoning is indeed essential to a meaningful court review.  *Fargnoli,* 247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted).

**B.      Standard for Awarding Benefits**

A claimant may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A claimant must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

9

expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C.

§ 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he

would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

     Regulations promulgated under the Act establish a five-step process for an ALJ's

evaluation of a claimant's disability.  20 C.F.R. § 404.1520.  In the first step, the ALJ must

determine whether the claimant is currently engaged in "substantial gainful activity."  20 C.F.R.

§ 404.1520(a)(4)(i).  If the claimant is working and the work is a substantial gainful activity, his

application for disability benefits is automatically denied.  *Id.*  If the claimant is not employed, the

ALJ proceeds to step two and determines whether the claimant has a severe impairment or

combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  A claimant who does not have a

severe impairment is not disabled.  *Id.*  Third, if the impairment is found to be severe, the ALJ

determines whether the impairment meets or is equal to those impairments listed in Appendix 1,

Subpart P of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is

conclusively presumed to be disabled, and the evaluation ends.  20 C.F.R. § 404.1520(d).  The

third step must be more than a conclusory statement – the ALJ must discuss the evidence

presented and include an analysis of whether and why the claimant's impairments, or those

impairments combined, are or are not equivalent in severity to one of the listed impairments.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).

If it is determined that the impairments do not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of:  (1) the claimant's capabilities despite limitations imposed by an impairment (i.e., RFC); and (2) whether those limitations prevent the claimant from returning to work performed in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  *Id.*  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the claimant's RFC, together with his age, education, and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits.  *Id.*  If the claimant carries the burden and demonstrates that the impairments meet or equal those within the Listing, he satisfies his burden of proof and is automatically entitled to benefits.  *Id.*  If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents him from performing his past work."  *Id.*  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work.  If

the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at

step five, that the claimant is "able to perform work available in the national economy."  *Id.*  The

step five analysis "can be quite fact specific."  *Burnett*, 220 F.3d at 126.


C.      **Plaintiff's Arguments on Appeal**

Plaintiff argues that in finding that she was not disabled, the ALJ erred in four respects.

First, Plaintiff argues that the ALJ's finding that her impairments did not meet or medically equal

the relevant impairments in the Listing was not based on substantial evidence.  (Pl.'s Br. at 12-

14.)  Second, she argues that the ALJ's finding that Plaintiff retained the RFC to perform light

work was not based on substantial evidence.  (*Id.* at 14-20.)  Third, Plaintiff argues that, because

her claim of disability was based on nonexertional limitations as well as exertional ones, the ALJ

erred by relying exclusively on the Medical-Vocational Guidelines ("Guidelines").  (*Id.* at 21-24.)

Finally, Plaintiff argues that the Court should remand this case for further development of the

record because the ALJ did not have available to him medical reports from Dr. Freeman and two

MRIs dated September 2004.  (*Id.* at 25-26.)  The Court will address each of Plaintiff's arguments

separately.


1.      **Whether the ALJ's Finding That Plaintiff's Impairments Did Not
        Meet or Medically Equal the Impairments in the Listing Was Based on
        Substantial Evidence**

Plaintiff argues that the ALJ's findings that her impairments did not meet or medically

equal the relevant impairments in the Listing is not supported by substantial evidence in the

record.  (Pl.'s Br. at 13.)  Plaintiff discusses three listed impairments in particular:  (1) disorders

12

of the spine (Listing 1.04); (2) major dysfunction of a joint due to any cause (Listing 1.02); and (3) asthma (Listing 3.03).  (*Id.* at 8.)  Although Plaintiff argues that her impairments meet or medically equal the relevant listed impairments, she fails to identify any medical evidence supporting that claim.  (*See id.* at 13-14.)  Review of the ALJ's decision and the medical evidence to which it cites shows that the ALJ's findings concerning the relevant impairments in the Listing were indeed supported by substantial evidence in the record.

### a.      Disorders of the Spine (Listing 1.04)

In determining whether Plaintiff's impairments meet or medically equal Listing 1.04, or disorders of the spine, the ALJ first described the relevant requirements.  The ALJ observed that:

> Listing 1.04 . . . requires, in pertinent part, compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness, or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

(R. at 17.)  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  In his decision, the ALJ discussed Plaintiff's MRI of her lumbar spine, dated September 6, 2004, which revealed minimal diffuse bulges at L4-L5 and L5-S1, with mild degenerative changes, and no evidence of canal stenosis. (R. at 17, 133-34.)  The ALJ also discussed Plaintiff's November 22, 2002 MRI of her cervical spine, which showed no evidence of disc herniation.  (R. at 17, 105.)  The ALJ also discussed Dr. Dhamija's May 2003 physical examination of Plaintiff, which revealed no motor or sensation loss experienced by Plaintiff.  (R. at 17, 115.)  He also noted Dr. Dhamija's findings that Plaintiff was able to bend forward and side to side, as well as walk on toes and heels, with normal tandem

walk.  (*Id.*)

Based on these medical records, the ALJ found that there was no evidence of spinal cord or nerve root compression, nor evidence of motor or sensation loss, and therefore concluded that Plaintiff's impairments did not meet or medically equal the criteria for Listing 1.04.  (R. at 17.) Substantial evidence in the record supports this finding.


        **b.**        **Major Dysfunction of a Joint (Listing 1.02)**

There is also substantial evidence supporting the ALJ's finding with respect to Listing 1.02, or major dysfunction of a joint due to any cause.  In describing the relevant requirements, the ALJ stated that:

> Listing 1.02 . . . is characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the affected joint, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint . . . . [w]ith, in pertinent part, involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively.

(R. at 17.)  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02.  In applying these criteria, the ALJ was required to consider evidence concerning Plaintiff's knee problems.  In his decision, the ALJ identified Plaintiff's March 29, 2003 MRI of her right knee, which showed mild to moderate degenerative changes and patellar tendinopathy or degeneration, and no meniscal or ligamentous tear.  (R. at 18, 144.)  The ALJ noted that Plaintiff's September 6, 2004 MRI of her right knee revealed Grade III chondromalacia patella.  (R. at 18, 132.)  Based on these medical records, the ALJ found no evidence showing that Plaintiff was unable to ambulate effectively, and therefore found that her impairments did not meet or medically equal Listing 1.02.  (R. at 17-18.)

14

### c.    Asthma (Listing 3.03)

There is also substantial evidence supporting the ALJ's finding that Plaintiff's

impairments did not meet or medically equal Listing 3.03, or asthma.  The ALJ observed that:

Listing 3.03 (Asthma) requires:

A.  Chronic asthmatic bronchitis with the FEV1 equal to or less than the values specified in the Listings or

B.  Attacks (as defined in the regulations), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

(R. at 18.)  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03.  In his decision, the ALJ noted that

Plaintiff uses inhalers as necessary, and that she uses a nebulizer in the winter.  (R. at 18, 189-90.)

He further noted that there was no evidence of pulmonary functioning testing, and that Plaintiff's

x-ray was normal.  (R. at 18.)  The ALJ observed that there was no evidence showing that, other

than treatment she received in an emergency room in October 2003, Plaintiff suffered any other

asthma attacks requiring medical intervention.  (R. at 18, 190-91.)  Based on this evidence, the

ALJ found that Plaintiff's impairments did not meet or medically equal Listing 3.03.  (R. at 18.)


### 2.    Whether the ALJ's Finding That Plaintiff Retained the RFC to Perform Light Work Was Based on Substantial Evidence

Plaintiff argues that the ALJ's decision that she retained the RFC to perform light work

was not based on substantial evidence.  (Pl.'s Br. at 14-20.)  Although she argues that "[t]here is

both objective medical evidence and medical opinion from treating doctors that [she] had these

medical conditions that could be reasonably expected to cause these symptoms" that prevented her

from performing light work, Plaintiff does not identify any evidence supporting that claim.  (Pl.'s Br. at 20.)  Despite Plaintiff's arguments to the contrary, it appears from the ALJ's decision and the medical records to which it cites that the ALJ's finding that Plaintiff retained the RFC to perform light work was based on substantial evidence in the record.

### a.   The ALJ's Analysis and the Relevant Medical Records

In his decision, the ALJ discussed Plaintiff's relevant medical records.  He described Dr. Dhamija's findings, stated in a May 10, 2003 report, that Plaintiff was able to bend forward and side to side, as well as walk on toes and heels, with normal tandem walks.  (R. at 17, 114-16.) The ALJ also relied on the state agency physician's RFC assessment report dated May 20, 2003. (R. at 20, 120-27.)  The report states that Plaintiff retains the ability to:  occasionally lift and/or carry 20 pounds or less; frequently lift and/or carry 10 pounds or less; stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday; sit (with normal breaks) for about 6 hours in an 8-hour workday; and push and/or pull without limitation.  (R. at 121.)

The ALJ also relied on MRI tests of Plaintiff's back and knees in making his findings concerning Plaintiff's RFC.  (R. at 17-18.)  The ALJ found that the MRI of Plaintiff's lumbar spine, dated September 4, 2004, revealed minimal diffuse bulges at L4-L5 and L5-S1, with mild degenerative changes, and no evidence of canal stenosis.  (R. at 17, 133-34.)  The ALJ further found that the MRI of Plaintiff's cervical spine, dated November 22, 2002, revealed that her cervical spinal cord was intact and that there was no evidence of disc herniation.  (R. at 17, 105.) The ALJ noted that Plaintiff's September 2004 MRI of her right knee revealed Grade III chondromalacia patella.  (R. at 18, 132.)  That MRI also showed that Plaintiff's right knee

16

"demonstrates normal bone marrow signal[,]" that her "ACL, PCL, MCL, lateral collateral ligament complex and extensor mechanism [are] intact[,]" that [t]he menisci are unremarkable[,]" and that "[t]here is no tear or significant intersubstance degeneration present." (R. at 132.) The ALJ noted that Dr. Dhamija, after performing a consultative examination, reported in her May 10, 2003 report restricted range of motion in Plaintiff's knees, but that Dr. Dhamija did not report any problems with Plaintiff's ambulation. (R. at 18, 114-16.)

In his decision, the ALJ also discussed a letter from Dr. Rivera, dated December 10, 2002, stating that Plaintiff should be found to be disabled. (R. at 20, 138.) That letter stated that Plaintiff had a herniated intervertebral disc, but gave no further explanation concerning Plaintiff's condition. (*See id.*) The ALJ explained in his decision that "although Dr. Rivera refers to 'disc herniations' the objective evidence shows no more than 'minimal' disc bulges." (R. at 21, 138.) The ALJ further explained that for these reasons, he would give the letter little weight relative to the objective medical evidence concerning Plaintiff's back condition. (*Id.*)

b.      **The ALJ's Discussion of Plaintiff's Testimony Concerning Her Pain**

During the hearing, Plaintiff testified that she suffered from a great deal of pain, and that the pain made her unable to work. (R. at 182.) In considering a claim of disability, the ALJ must analyze all of the evidence in the record and provide adequate explanations for disregarding or rejecting evidence. *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981). If the ALJ concludes that the claimant's testimony is not credible, the ALJ must indicate the basis for that conclusion in his decision. *Id*. The ALJ must give serious consideration to the claimant's subjective assertions

17

of pain, even when those assertions are not fully confirmed by objective medical evidence.  *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986).  The ALJ has discretion, however, "to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (internal quotations omitted).

In his decision, the ALJ discussed Plaintiff's testimony concerning her pain.  According to the ALJ, "[t]he claimant testified that she suffers from significant back and knee pain."  (R. at 19.)  The ALJ noted that "[s]he has had more than five injections in the past year, which have provided some relief of her back pain."  (*Id.*)  He further noted that "[s]he has also received injections for her knee pain" and has "had physical therapy."  (*Id.*)  He noted that Plaintiff testified during the hearing that "she can only lift and carry a gallon of milk, and sit, stand, and walk for short periods."  (*Id.*)

The ALJ also discussed Plaintiff's testimony with respect to her daily activities.  He noted that Plaintiff "gets the children ready for school and gives them breakfast."  (*Id.*)  The ALJ further noted that "[s]he does light housecleaning, and some cooking" and "is able to help the children with homework."  (*Id.*)  The ALJ explained that he had reservations as to whether Plaintiff's assertions concerning her impairments, and their impact on her ability to work, was fully credible. (*Id.*)  According to the ALJ, "[t]he record fails to provide any objective medical evidence that the claimant's impairments are as severe as her hearing testimony indicates."  (*Id.*)  The ALJ noted that "[t]he record fails to show the claimant's requiring any current emergency room treatments, hospitalization, significant active treatment, or significant office care other than for routine maintenance."  (*Id.*)  He once again referred to Dr. Dhamija's consultative examination report,

which found Plaintiff capable of bending forward and side to side, as well as walking on toes and heels, with normal tandem walk.  (R. at 19, 115-19.)

Although Plaintiff argues that the ALJ "simply tries to either ignore or reject significant medical findings and testimony in his RFC evaluation at Step 5[,]" she fails to identify what medical findings or testimony it is that the ALJ ignored.  (Pl.'s Br. at 20.)  The ALJ properly considered Plaintiff's subjective complaints of pain, and there is substantial evidence in Plaintiff's medical records and testimony concerning her daily activities that support the ALJ's finding concerning Plaintiff's RFC.

### 3.      Whether the ALJ Erred In His Use of the Guidelines

Plaintiff argues that the ALJ erred in his use of the Guidelines to find that Plaintiff was not disabled.  (Pl.'s Br. at 21-24.)  According to Plaintiff, "the ALJ relied entirely on [the Guidelines] to arrive at a finding of not disabled[,]" and that "[t]his was legal error because [Plaintiff] had [] non-exertional limitations and side effects from medications which would preclude the exclusive use of that Rule."  (Pl.'s Br. at 23.)

In *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000), the Third Circuit Court of Appeals observed that:

> [t]he [Guidelines] establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform.  When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments.  The [Guidelines] do not purport to answer this question, and thus . . . the practice of the ALJ determining without taking additional evidence the effect of the nonexertional impairment on residual functional capacity cannot stand.

19

*Sykes*, 228 F.3d at 270.  The court held that "to meet the burden of establishing that there are jobs in the national economy that a claimant with exertional and nonexertional impairments can perform[,]" the Commissioner is required to provide "the testimony of a vocational expert or other similar evidence . . . ."  *Id.* at 273.  "In the absence of evidence in addition to the guidelines . . . , the Commissioner cannot establish that there are jobs in the national economy that someone with the claimant's combination of impairments can perform."  *Id.*

Here, the ALJ found that Plaintiff was not disabled based on testimony by the VE.  In his decision, the ALJ noted that during the hearing, he asked the VE "to consider a hypothetical situation involving an individual with age, educational background, employment history, and a residual functional capacity exactly the same as that of the claimant."  (R. at 22, 211-12.)  The ALJ further noted that at the hearing, "[t]he vocational expert testified that with the parameters as cited, such an individual would be capable of making a successful adjustment to work which exists in significant numbers in the national and regional economies."  (*Id.*)  In his decision, the ALJ identified the three jobs that the VE gave as examples of jobs that Plaintiff could perform, as well as the number of such jobs available in both the national and regional economies.  (*Id.*)  Plaintiff's argument that exclusive use of the Guidelines is inappropriate for cases involving nonexertional impairments therefore does not apply in this case.

### 4.     Whether the ALJ Failed to Discuss All of the Relevant Medical Evidence

Plaintiff argues that the Court should remand this case to the ALJ to further develop the record concerning Plaintiff's medical condition.  (Pl.'s Br. at 25.)  According to Plaintiff, she

submitted to the Appeals Council medical records that Dr. Freeman, a pain specialist, prepared between May 2003 and September 2004, and those records were not available to the ALJ at the time he made his decision.  (*Id.* at 25-26.)  Plaintiff also identifies MRI tests of her back and her right knee dated September 2004 as additional evidence that the ALJ should consider.  (*Id.*)

A reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  Here, the two September 2004 MRI tests that Plaintiff refers to in her brief were available to the ALJ when he decided Plaintiff's case – he discussed the MRI reports in detail in his decision.  (R. at 17-18, 132-34.)  As for Dr. Freeman's medical reports dated between May 2003 and September 2004, Plaintiff fails to explain why they were not made available to the ALJ before or soon after the date of the hearing, which occurred on September 16, 2004.  (*See* Pl.'s Br. at 25-26.)  Without such explanation, remand of this case would not be appropriate.

## III.    CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order accompanies this Memorandum Opinion.

Dated:  September 11, 2006

                          s/ Garrett E. Brown, Jr.        
                         GARRETT E. BROWN, JR., U.S.D.J.